RENFRO DRUG COMPANY ET AL V. H. L. LEWIS.

No. A-2638. Decided December 6, 1950.
Rehearing overruled February 7, 1951.
(235 S. W., 2d Series, 609.)

508

510

*Hart, Brown & Sparks and J. H. Hart,* of Austin, for Renfro Drug Company, *Coleman Gay,* of Austin, for Capital National Bank, in Austin, petitioners.

The Court of Civil Appeals erred in holding that the Bank was not liable for the condition of the entrance into Renfro's Drug Store from the Garage, when it, in its lease with Renfro, had agreed to "keep the entrances leading into lessee's store in good repair", there being no evidence to show that Renfro had changed said entrance or caused it not to be in a safe con-

dition, when plaintiff Lewis was injured, and said Court of Civil Appeals also erred in ruling that Renfro was not entitled to full indemnity from the Bank for its liability to Lewis, arising out of the condition of said entrance. Cowart v. Meeks, 131 Texas 36, 111 S. W. 2d 1105; Galveston H. & S. A. Ry. Co. v. Matzdorf, 102 Texas 42, 112 S. W. 1036; Taylor v. Fort Worth Poultry & Egg Co., 112 S. W. 2d 292, error dismissed.

The Bank complains of the Court of Civil Appeals' judgment in that it erred in not holding Lewis guilty of contributory negligence; that petitioner Bank had right to rely on safety of building designed by competent architects, until it had notice of unsafe condition; that petitioner was not in partial control of passageway by requirement in lease; and that petitioner is entitled to complete indemnity from Renfro and from the Garage. Marshall v. San Jacinto Bldg. Co., 67 S. W. 2d 372; Houston National Bank v. Adair, 146 Texas 387, 207 S. W. 2d 374; Hamblen v. Mohr, 171 S. W. 2d 168; Perez v. Raubaud, 76 Texas 191, 13 S. W. 117; Marshall v. Heard, 59 Texas 266.

*Ralph W. Yarborough* and *Will Mann Richardson,* both of Austin, for H. L. Lewis, and *Looney, Clark & Moorhead, Graves & Dougherty* and *Ireland Graves,* of Austin, for Edward Joseph (Motoramp Garage) respondent.

Respondent Lewis contends that both the Bank and Renfro were guilty of negligence in the way the entrance to the Drug Store was maintained; that such negligence was the proximate cause of plaintiff, Lewis' fall; that Lewis was not guilty of contributory negligence. Liedeker v. Grossman, 146 Texas 308, 206 S. W. 2d 232; McCrory's Store Corp. v. Murphy, 164 S. W. 2d 735; Texas & P. Ry. Co. v. Day, 144 Texas 277, 197 S. W. 2d 332.

Respondent Joseph contends that in as much as the passageway was under the control of the Bank and was not considered in his lease from Bank that he was in no way responsible for the unsafe condition of said passageway. Therefore the Bank is not entitled to indemnity from him in any way. Texas Loan Agency v. Fleming, 92 Texas 458, 49 S. W. 1039; Denson v. Wilcox, 298 S. W. 534; Flynn v. Pan American Hotel Co., 143 Texas 219, 183 S. W. 2d 446.

MR. JUSTICE CALVERT delivered the opinion of the Court.

H. L. Lewis sued Renfro Drug Company, a corporation, Edward Joseph, doing business at Motoramp Garage, and the

Capital National Bank in Austin, a corporation, for the recovery of damages for personal injuries sustained in a fall through a doorway leading from Motoramp Garage into Renfro Drug Store. The defendants in the trial court will be referred to in this opinion as Renfro, Joseph or Motoramp, and Bank.

Trial was to the court without the intervention of a jury, and at the conclusion thereof the court entered judgment denying to plaintiff Lewis any recovery against Joseph, granting to Lewis a recovery of $22,256.26 against Renfro and Bank, jointly and severally, granting to Renfro a recovery over against Bank by way of indemnity of any sum or sums it should pay or cause to be paid in satisfaction of the judgment in favor of Lewis, and denying to Bank and Renfro any recovery over against Joseph either by way of contribution or by way of indemnity. Lewis did not perfect an appeal from that portion of the judgment denying him a recovery against Joseph. Both Renfro and Bank perfected appeals from that portion of the judgment awarding Lewis a recovery against them and from that portion of the judgment denying them a recovery over against Joseph. In addition Bank perfected its appeal from that portion of the judgment awarding Renfro a recovery over against Bank by way of indemnity.

The Court of Civil Appeals disagreed with the trial court's judgment of nonliability of Joseph to Lewis; but, since Lewis did not appeal from that portion of the judgment, considered Joseph liable to Lewis only for the purpose of determining whether Joseph as a joint tort-feasor should be required to indemnify Bank or contribute, under the provisions of Art. 2212, to the payment of the judgment. The court proceeded to affirm the judgment in favor of Lewis against Renfro and Bank; but, holding that Joseph had no control over the premises where the injuries occurred, denied both Renfro and Bank any recovery over against Joseph for any portion of the judgment. The court also disagreed with that portion of the trial court's judgment which required Bank to indemnify Renfro and reformed that portion of the judgment so that each, Bank and Renfro, were required to contribute equally to the payment of the judgment. 228 S. W. (2d) 221. Both Renfro and Bank filed petitions for writs of error and both petitions were granted.

Before this court Renfro has abandoned its claim to contribution from Joseph but Bank, by appropriate points of error,

has preserved its right to press its claim against Joseph for indemnity and, alternatively, for contribution.

The questions raised here for our determination by points of error of one or the other of the petitioners may be stated generally as follows:

(1) That there was no evidence to sustain the implied finding of the trial court that either Renfro or Bank was guilty of actionable negligence proximately causing plaintiff's injuries;

(2) That the evidence shows conclusively, as a matter of law, that plaintiff Lewis was guilty of contributory negligence which was a proximate cause of his injuries; and

(3) The respective liabilities of Joseph, Renfro and Bank to each other.

■ No findings of facts or conclusions of law were requested of or filed by the trial judge. The trial court's judgment, therefore, implies all necessary fact findings in support of the judgment. In seeking to determine whether there is any evidence to support the judgment and the implied findings of fact incident thereto "it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or is contradictory in its nature." Austin v. Cochran, (Com. App.,) 2 S. W. 2d 831; Cartwright v. Canode, 106 Texas 502, 171 S. W. 696.

The following statement of the facts, for the most part unchallenged here, is adopted from the opinion of the Court of Civil Appeals:

"Mr. Lewis was injured on March 26, 1948. He was then a resident of Marfa, Texas, and 68 years old. While on the way to visit Dr. W. P. Morgan, who officed in the Capital National Bank Building, he sustained his injuries.

"The Bank owned the premises occupied by the Motoramp, Renfro's, the office building, and the bank. They are located on the north side of West Seventh Street in Austin. Commencing on the west is the Motoramp Garage, a public storage garage, adjoining on the east is Renfro's Drugstore, and adjoining the drugstore on the east and connected by two doors, is the elevator lobby of the office building, and to the east and adjoining are the Bank's quarters. West Seventh Street, where these

buildings are, declines rather sharply from west to east, the fall being 45 inches in the half block occupied by these buildings. There is an opening, a door, between the garage and the drugstore. * * *

"The door is of solid metal, weighing approximately 225 pounds. (Note: A picture of the door is shown in the opinion of the Court of Civil Appeals). While the picture shows the door open it is ordinarily closed and was closed when Mr. Lewis opened it to enter the drugstore. This door is kept closed by a standard closing device called a door check. The door has on it three signs. At the top and at about the eye level of the average adult is the sign, 'Caution, Watch Your Step.' The sign is in red letters of about 3" in height on a white background. Then, the sign, 'Renfro No. Two, Prescription Pharmacy,' appears. Below this, and not visible in the picture, is a smaller sign reading, 'Watch Step.'

"This door opens into the drugstore and away from the garage and opens directly over the steps, there being no platform inside the drugstore on the same level as the garage floor. The first step taken from the garage to the drugstore is down the height of the top step or riser which is 8½", and the next step or riser down to floor level of the drugstore is 8-1/8", or a total difference in floor levels between the garage and the drugstore of 17-1/4". There is probably a half inch variation in these measurements due to the worn condition of the edges of the step. The width of the tread or step was 17".

"Also, to be noted is the fact that this door is recessed from 12" to 14" in the garage side of the wall. * * *

"Mr. Lewis was on his way to visit Dr. Morgan when he was injured. He had been to see Dr. Morgan before, and on one such occasion while he parked his car in the motoramp he did not see or use the door pictured above, which constitutes an exit from the motoramp and an entrance to Renfro's as well as a 'short cut' or passageway to the elevator lobby of the Bank's office building.

"On the day of the accident Mr. Lewis drove his car into the Motoramp and stopped his car in the driveway on the extreme east side of the garage and immediately west of the partition wall. He then stepped upon a safety island immediately west of the driveway and waited there approximately one or two minutes before the garage attendant gave him a claim check for his car. The driveway is approximately twelve feet in width

and the safety island is located across the driveway from the door into the drugstore.

"Mr. Lewis had intended after parking his car to go out the front of the Motoramp Garage to Seventh Street and then to enter the elevator lobby from the street. While waiting for his claim check, however, he saw a man go through the door from the garage into the drugstore, and he observed while the door was open that it was an entrance into the drugstore. He then decided that he would use the door and go through the drugstore to the elevator lobby.

"By the time the garage attendant handed him a claim check for his car, the car immediately ahead of his had been moved, and one of the garage employees had entered his car in order to move it from the driveway to storage. When Mr. Lewis received his claim check the garage employee in his car motioned for him to pass in front of his car toward the door to the drugstore, which he did.

"The front of Mr. Lewis's car was stopped about 4 feet north of the north edge of the door into the drugstore, so in passing in front of this car he must have been at least the same distance north of the door when he started walking down the wall to the door. He kept close to the wall because of cars passing and in order to protect himself from the danger of being hit.

"In approaching the door in this manner, Mr. Lewis did not observe the signs on the door or the fact that the door was solid. On reaching the door he grabbed the handle of the door, presumably with his left-hand, and pushed inwardly and, in the words of Mr. Lewis:

"'When I turned the knob and pushed the door open and started through, as I went into the drugstore, the door snapped back, and my feet slipped from under me, and everything from there went black. The next thing I found myself lying out in the floor when I came to myself.'"

■■ To require either Renfro or Bank to respond in damages to Lewis it must, of course, appear that they violated some duty of care which they owed him under the circumstances. We are met at the threshold of our consideration of the case by the contentions of Renfro and Bank, separately urged, that at the time of his injury Lewis was no more than a licensee on the premises and that there is no evidence that either violated any duty of care they owed him. We will first consider the position of Renfro.

If, in attempting to pass through the doorway where he was injured, Lewis, as to Renfro, was no more than a mere licensee, Renfro owed him no duty of care except to not injure him willfully, wantonly, or through gross negligence. Carlisle v. J. Weingarten, Inc., 137 Texas 220, 152 S. W. 2d 1073; 38 Am. Jur., p. 765, sec. 104; 65 C.J.S. p. 491, sec. 35; 30 Tex. Jur., p. 857, sec. 175. There is no allegation or proof by Lewis that his injuries were wilfully or wantonly inflicted or resulted from the gross negligence of any of the defendants. On the other hand, if in attempting to pass through the doorway Lewis was an invitee of Renfro, express or implied, Renfro owed him a duty to use ordinary care to keep the premises in a reasonably safe condition so that he would not be injured. Kallum v. Wheeler, 129 Texas 74, 101 S. W. 2d 225; Carlisle v. J. Weingarten, Inc., supra; Walgreen-Texas Co. v. Shivers, 137 Texas 493, 154 S. W. 2d 625. The duty to keep the premises in a reasonably safe condition was not limited to the rented floor space alone but extended as well to the entrances into and the exits from the drugstore. 38 Am. Jur., p. 795, sec. 134.

■ At the time that Lewis drove his car into the garage and alighted therefrom he had no intention of going into or passing through the drugstore. His subsequent effort to enter the store was for the purpose of taking a short cut through the store to the elevators to go to Dr. Morgan's office. It is not shown that he had any present intention of making a purchase in the store, or, for that matter, any intention of inspecting the merchandise in the store with the view of making a purchase later. His only fixed purpose at the time was to use the drugstore premises as a passageway to the elevators in the lobby of the building. Under these circumstances it is the contention of Renfro that the purpose of Lewis in undertaking to enter and pass through the drugstore was to serve his own convenience, with no purpose of entering into any business relations with the owner of the store or of otherwise conferring any benefit on Renfro; that, therefore, Lewis did not enter under an implied invitation from Renfro, and Renfro did not owe him a duty to use ordinary care to see that the premises were reasonably safe for his use. In support of its position Renfro cites, among others, the following cases: Kruse v. Houston & T. C. Ry. Co., Civ. App. 1923, 253 S. W. 623; Galveston H. & S. A. Ry. Co. v. Matzdorf, 102 Texas 42, 112 S. W. 1036, 20 L. R. A. N. S. 833 (1908); Shawver v. American Railroad Express Co., Civ. App. 1922, 236 S. W. 800, writ refused; Houston Belt & Terminal Ry. Co. v. Rogers, 44 S. W. 2d 420, 1922, writ dism.; Bustillos v. Southwestern Portland Cement Co., Com. App. 1919,

211 S. W. 929; Taylor et al v. Ft. Worth Poultry & Egg Co. et al, Civ. App. 1938, 112 S. W. 2d 292. The cases cited do announce the general rule that to claim the status of implied invitee it must appear that the purpose of one going on premises owned by or under the control of another was for the benefit of the owner.

In none of the cases cited, however, did injury occur to the plaintiff while in or going into a store where the owner kept his merchandise open and on display for inspection by the public as is the case with modern drugstores. Furthermore, the rigidity of the rule announced in the cases cited has been definitely relaxed by more recent decisions of our courts. See Kallum v. Wheeler, 129 Texas 74, 101 S. W. 2d 225 (1937); Carlisle v. J. Weingarten, Inc., 137 Texas 220, 152 S. W. 2d 1073 (1941); Texaco Country Club v. Wade, Civ. App. 1942, 163 S. W. 2d 219. For an interesting discussion of the impact of the decisions of this Court in the cases of Kallum v. Wheeler and Carlisle v. J. Weingarten, Inc., on the rule of duty theretofore recognized as resting on the owner of premises, see 22 Tex. Law Review 489.

In the Carlisle case the injured party was a girl some eight years of age who accompanied her mother to a grocery store and fell over a box of canned goods negligently left in the aisle of the store. Admittedly the child was not in the store to herself transact any business with the store or for any purpose of benefit to the owner. Nevertheless, this court held the child to be an implied invitee to whom the owner owed a duty of ordinary care for her safety. While it may be correctly said that that holding was limited on the facts to a duty owed to children, yet the rule stated in the opinion is broad enough to govern the rights of the parties in this case. It was made clear in the opinion that the existence of an intent to make a purchase was not the controlling factor in determining the status of the injured party and the court said:

" * * * The most essential factor to be considered in determining this issue is whether the premises were public or private. If one uses his premises for private purposes, he has no reason to expect visitors other than those especially invited by him; and hence is under no obligation to keep his premises in a safe condition for the protection of those who may enter thereon without his invitation. It may be more convenient for him and those who live and work thereon to allow the premises to remain in a condition that would be unsafe as to strangers. Under

such circumstances, strangers having no business thereon of interest to the owner have no right to demand that such owner keep his premises in such condition that they may enter thereon in safety at their will. On the other hand, one who maintains a merchandise establishment, or other public place, to which, by reason of the business so conducted thereon, the public is impliedly invited to enter, necessarily expects visitors at all times. * * * It would not be a very humanitarian doctrine to say that a merchant could thus impliedly invite the public to his store, but that he was under the duty of exercising ordinary care for the safety only of those who had an intention of buying his merchandise; * * *."

■ The Court quoted with approval the rule annouced in Restatement of the Law of Torts, page 898, sec. 332, subsection (b) as follows:

" 'In determining whether a particular person is a business visitor of a possessor of land, the important thing is the desire or willingness to receive that person which a reasonable man would understand as expressed by the words or other conduct of the possessor. It is immaterial that the person is one whom the possessor is not willing to receive as a business visitor if the possessor's words or other conduct are understood, and would be understood by a reasonable man, as indicating the possessor's willingness. The nature of the use to which the possessor puts his land is often sufficient to express to the reasonable understanding of the public or classes or members thereof a willingness or unwillingness to receive them. *Thus, the fact that a building is used as a shop gives the public reason to believe that the shopkeeper desires them to enter or is willing to permit their entrance not only for the purpose of buying but also for the purpose of passing through the shop.* This is so because shopkeepers as a class regard the presence of the public for any of these purposes as tending to increase their business. * * *' ". (Emphasis added.)

Pertinent also to the facts in the instant case, though not quoted in full in the opinion of this court in the Carlisle case, is the rule set out in subdivision (c) of Section 332, Restatement of the Law of Torts, pp. 899-900 where it is said:

"It is not necessary that the visitor's purpose be to enter into immediate business dealings with the possessor. The benefit to the possessor may be indirect and in the future. Thus, those who enter a shop with no present purpose of buying but merely to look at the goods displayed, are business visitors of the shop.

*So, too, where the shopkeeper permits his shop to be used as a shortcut between two streets, those so using it are business visitors of the shopkeeper.* In both cases the chance that the visitor, who comes out of mere curiosity or to save time, may see some article which he may stop or return to purchase is of sufficient advertising benefit to the shopkeeper to make the visit connected with his business." (Emphasis added.)

■ Renfro had its sign on the door where the injury occurred, advertising its prescription department, and Renfro's manager testified that the door was for the use of the general public. Thousands used the passageway through the drugstore each month. Lewis had been a customer of the store on a former occasion. The presence of members of the general public in and passing through the drugstore tended to increase Renfro's business. We hold that there was evidence to support the trial court's implied finding that Lewis was an implied invitee of Renfro on the premises where the injury occurred. The provisions of its lease set out below did not vest such exclusive control of the passageway in Bank as to relieve Renfro of its duty of care to its invitees.

We next consider whether Bank was under any duty to exercise ordinary care to keep the premises where Lewis was injured in a reasonable safe condition for his use. In determining this question some of the provisions of the lease agreement between Bank as lessor and Renfro as lessee are of prime importance. This agreement, originally made in 1941 for a five-year-period beginning February 1, 1942, and renewed in 1944 for a three-year period, contained the following provisions:

"1. The lessor hereby leases, demises, and lets unto lessee, and the lessee hereby hires, approximately One Thousand Five Hundred Nineteen Square Feet (1,519 sq. ft.) of floor space on the West side of the ground floor of the Norwood Building in Austin, Travis County, Texas, with a frontage of approximately Thirty Feet (30 ft.) on West Seventh Street, being the ground floor space now occupied by the lessee.

    &#42;    &#42;    &#42;

"4. Lessee shall have the right, at its own expense, to make such alterations in and improvements upon the space hereby leased as it may desire to make, provided, however, that before making any such alterations or improvements, lessee shall submit plans and specifications therefor to lessor and shall receive its approval thereof, and provided further that all such improvements and alterations shall belong to lessor.

\* \* \*

"6. It is agreed and understood that lessee will keep open at all times during the hours that its store is open for business a passageway through the ground floor portion of the leased premises from the Norwood Building into the Motoramp Garage.

\* \* \*

Lessor Covenants:

"(a) That lessor will keep the corridors, halls, and entrances leading to lessee's store in good repair."

It will be observed that under the terms of the lease Renfro was obligated to keep a passageway open through its store from the Norwood Building (bank building) into the Motoramp garage; and that while Renfro had the right, with the consent of Bank, to make alterations and improvements on the leased premises, Bank expressly obligated itself to keep the "entrances leading to lessee's store in good repair."

While the contract itself does not reflect the reason for the obligation imposed on Renfro to keep a passageway open through its store into Motoramp garage, the record reflects that this passageway furnished to all of Bank's tenants and their business guests a more direct route from the garage to the elevators in the office building lobby and from the lobby to the garage—a route which could be used by such tenants and their guests without exposure to the elements in inclement weather. In other words, the passageway from the lobby of the office building through the drugstore and into the garage, and necessarily therefore, from the garage through the drugstore to the lobby of the office building, was one reserved by Bank as landlord for the common use and benefit of all of its tenants in the various parts of the building. Under these circumstances Bank was under a duty to those, without prior notice of defects, entering as business guests or invitees of the tenants to use ordinary care to keep the entrance to the passageway in a reasonably safe condition for their use. This is the rule given general recognition and approval by the courts of this country, (see 32 Am. Jur. pp. 561-570, secs. 688-691; 52 CJS p. 29, sec. 417 (2) (a) ; 97 ALR 220) and is the one adopted and followed by the courts of this state. Paternostro v. Bradley et al., Civ. App. 1924, 262 S. W. 896; 6 Tex. Jur. Ten Year Supp. p. 800, sec. 205a. The basis for the rule imposing a duty of ordinary care on the landlord in such circumstances is two-fold: that the control of entrances, halls, stairways, etc. reserved for use

in common by two or more tenants of a building is retained in the landlord, and that those using such entrances, halls, stairways, etc. as invitees of the tenants are impliedly invited to do so by the landlord. 32 Am. Jur. p. 567, sec. 691; 97 ALR 224. In imposing on the landlord a duty of ordinary care to those who use common entrances as business guests of tenants it has been said that "a right of ingress and egress for all such persons is essential, not merely to the enjoyment of the rented premises by the tenants, but also to the renting of them by the landlord; it is part of that for the use of which he is paid, and it exists for the mutual benefit of landlord and tenants alike." Reardon v. Shimelman, 102 Conn. 383, 128 Atl. 705, 39 ALR 287. At the time of his injury Lewis was using an entrance to the building for the purpose of calling on Dr. Morgan, one of Bank's tenants, for professional services. The entrance was one reserved by Bank for the common use of all its tenants in the building. While the boundaries of the passageway may not be clearly defined across the entire floor space leased to Renfro, the passageway necessarily began in its west to east course and terminated in its east to west course in the only doorway between the garage and the drugstore.

There is another reason why Bank was under a duty to Lewis to exercise ordinary care to keep the doorway and steps where Lewis was injured in a reasonably safe condition for his use. It arises out of the lease agreement between Bank and Renfro and is founded upon the covenant of Bank to keep the "entrances leading to lessee's store in good repair."

While there is a division of authority among the courts of this country as to whether a negligent breach of a covenant to repair imposes liability on a landlord for injuries sustained by reason of a failure to do so, the majority view having been at one time against liability, it is said that "there is now a pronounced trend toward the view that the landlord is liable for personal injuries under such circumstances." 163 ALR 330 (see this note for a collation of the cases on the subject). The American Law Institute's Restatement of the Law of Torts adopts the view of those courts holding the landlord liable and states the rule as follows:

"A lessor of land is subject to liability for bodily harm caused to his lessee and others upon the land with the consent of the lessee or his sub-lessee by a condition of disrepair existing before or arising after the lessee has taken possession, if

(a) the lessor, as such, has agreed by a covenant in the lease or otherwise, to keep the land in repair, and

(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented." Vol. 2, p. 967, sec. 367.

The courts of this state have adopted the rule that imposes liability on the landlord. Ross v. Haner, Com. App., 258 S. W. 1036; Pollack v. Perry, Civ. App. 1920, 217 S. W. 967, rev. on other grounds 235 S.W. 541. That rule imposing liability is recognized as the law of this state, see also Perez v. Raybaud, 76 Texas 191, 13 S. W. 177, 7 LRA 620; Jackson v. Amador, Civ. App. 1934, 75 S. W. 2d 892, writ dism.; Morton et al v. Burton-Lingo Co., 136 Texas 263, 150 S. W. 2d 239.

In Perez v. Raybaud this court said: "It is well settled that the owner of leased premises is liable to the public or to third persons for injuries resulting from a defective structure on the premises, when the defect existed when the lease was made, *or when he had convenanted to repair, and keep in repair.*" In Ross v. Haner the Commission of Appeals analyzed many of the earlier cases on the subject and the theories upon which the respective holdings of liability and non-liability were based. The basis of the rule is also discussed at length in the note in 163 ALR 230 and need not be restated here.

■ Bank denies that the rule applies to the facts in this case since it covenanted to keep in repair the entrances leading *to* lessee's store as distinguished from the entrances leading *into* lessee's store. We are not impressed with the distinction. To agree would require a refinement of reasoning to which we are not prepared to commit ourselves.

Webster's New International Dictionary defines the word "entrance" as "the means or place of entering, as a door or gate." Corpus Juris Secundum says the word "entrance" is "a term meaning a door or gate for entering a gate, an opening, *and, perhaps, a passage.* * * * The term has been held synonymous with 'approach' and 'entry' ". The same authority defines the word "entry", when used as a part of a building, as "a passage leading *into* a house or other building or to a room." We think it a sensible and practical interpretation of the language used in the lease, when applied to the portion of the premises where the injury occurred, to hold that the "entrance leading to lessee's store" covered and included the

door itself and the step necessary to be used in order to affect a complete entry into lessee's store. Before one could enter the store it was necessary that the door be opened and that the step-down to the floor be used. The covenant of Bank to repair the entrance strengthens the conclusion that it reserved control thereof. Rice v. Ziegler, 128 Ohio St. 239, 190 N. E. 560.

Having concluded that both Renfro and Bank owed Lewis a duty of ordinary care to keep the premises where he was injured in a reasonably safe condition for his use, we next consider whether there was any evidence to support the trial court's implied finding of a negligent breach of such duty proximately causing Lewis's injuries.

In his petition Lewis charged the defendants with the following negligent acts and ommissions which were alleged to be a proximate cause of his injury:

"(1) The defendants provided and maintained a door at said entrance which opened immediately and dangerously upon an abrupt step-down without having a platform inside the door level with the garage floor.

"(2) The defendants provided and maintained a heavy solid metal door at said entrance, which masked from plaintiff the difference in floor levels.

"(3) The defendants installed and maintained the said heavy solid metal door in such a manner that it opens inward over the step, preventing the user from seeing the step-down in time to observe and avoid the danger.

"(4) The defendants provided and maintained upon said entrance door an automatic closing fixture which requires the user to push against said door with enough strength to overcome the strong initial tension and then the door opens easily, causing the user to plunge rapidly through the door without an opportunity to observe the dangerous step, or to catch himself, or to check his fall from the Motoramp Garage to the floor of Renfro Drug Store.

"(5) The automatic closing fixture provided and maintained by defendants on said door contains a strong hydraulic closer, which was out of adjustment, causing the door after being opened to jerk back rapidly, forcefully and unexpectedly against the user.

"(6) The tread of the step is of marble or some similar sub-

stance, and defendants have allowed said step to become worn, slick and uneven.

"(7) The defendants have allowed the step to become worn in such a manner that it slopes forward and downward.

"(8) The defendants have not provided a corrugated metal or rubber nosing for the front edge of the step to prevent slipping.

"(9) The defendants failed to provide a strong and substantial railing beside the steps, on which a user of the entrance when slipping, tripping or stumbling, could catch and regain his balance.

"(10) The defendants were negligent in providing and maintaining the entrance and steps in the manner and condition in which the entrance and steps were maintained on March 26, 1948.

"(11) The defendants provided and maintained steps at said entrance the risers of which were unusually high and unsafe in height.

"(12) The defendants provided and maintained steps at said entrance which were of unusual and unsafe dimensions in that the sum of the width of treads and height of riser was so great that the steps could not be used without interruption of the normal gait of the average user, and plaintiff shows that on the date and at the time in question he was using his normal gait which is approximately that of the average user."

■ The Court of Civil Appeals has found that the evidence is insufficient to support the trial court's implied finding in Lewis's favor on the fifth ground alleged and this court is bound by that finding. Bank seems to interpret this finding by the Court of Civil Appeals as being a finding also that the evidence was insufficient to sustain an implied finding in Lewis's favor on the fourth ground of negligence alleged. We do not so interpret the holding of the Court of Civil Appeals.

It is established by the physical facts and is undisputed that the door in question opened immediately upon an abrupt step-down; that there was no platform inside the door on a level with the garage floor; that the door was heavy and solid and masked the difference in the floor levels; that the tread of the step was of marble, which had become worn, slick and uneven;

that there was no corrugated metal or rubber nosing on the front edge of the steps to prevent slipping; and that there was no handrailing by the steps. The testimony of architects Thomas, James and Kermacy, much of which is quoted in the opinion of the Court of Civil Appeals (228 S. W. 2d 225, 226), is certainly some evidence that the door was heavy and solid and that strength was required to overcome the weight of the door and the tension exerted against it by the automatic door-closer; that the steps were worn, hollowed out and uneven; that the risers were higher than recommended for stairways in public buildings and that the tread of the step was much wider than is recognized as good architectual designing. Plaintiff Lewis testified that when he turned the knob and pushed the door open to go through, "the door snapped back" and his feet slipped from under him. Evidence that any one or all of those conditions created a dangerous situation and made the entrance unsafe for use may be found in the testimony of the architects Thomas, James and Kermacy, who qualified as experts and expressed their opinions to that effect.

As evidence tending to charge the defendants with knowledge of the unsafe condition, testimony was introduced showing that some twelve years prior to this injury a woman fell through the same door and injured herself and after giving notice to Renfro of her injury an insurance company paid her doctor bill; that some six or eight months prior to plaintiff's fall a man fell through the doorway, knocking over some boxes of Kleenex and breaking a bottle of milk of magnesia, and that one of Renfro's employees helped to pick the man up and the fall was reported to Renfro's manager; that Renfro's manager had seen others stumble momentarily as they sought to pass through the door; that where a door opened from the elevator lobby into the bank proper, Bank maintained a landing or platform inside the door, a corrugated rubber covering on the steps and a handrail by the steps. These facts and circumstances are evidenced to support a finding that both Renfro and Bank knew or in the exercise of reasonable diligence could and should have known of the unsafe condition of the entrance in time to have corrected the condition.

We conclude that there was some evidence to support the implied finding of the trial court that both Renfro and Bank were negligent in failing to keep the premises where Lewis was injured in a reasonably safe condition for his use. Likewise we conclude that there was evidence to support a finding that such negligence was a proximate cause of plaintiff's injuries. J. Wei-

garten v. Brockman, 134 Texas 451, 135 S. W. 2d 698; Walgreen-Texas Co. v. Shivers, 137 Texas 493, 154 S. W. 2d 625; Blanks v. Southland Hotel, Inc., 149 Texas 139, 229 S. W. 2d 357. To reach a contrary conclusion we would be required to find that there was such an absence of evidence showing negligence and proximate cause arising therefrom that reasonable minds could not differ as to the conclusion to be reached. Paris & G. N. Ry. Co. et al v. Stafford, Com. App. 53 S. W. 2d 1019, 1022; Trinity & B. V. Ry. Co. v. McDonald, Com App. 208 S. W. 912, 914. This we cannot do.

■ Nor does it militate against the liability of the defendants that plaintiff was unable to prove with certainty which of the negligent acts or omissions caused his fall and injury or that his fall could not have been caused by his own negligence. J. Weingarten v. Brockman, supra; Burlington-Rock Island R. Co. v. Ellison et al., 140 Texas 353, 167 S. W. 2d 723. In passing on a similar contention the court in Bock v. Fellman Dry Goods Co., Com. App. 212 S. W. 635, said: "The plaintiff was not required to exclude the probability that the accident might have occurred in some other way. To so hold would impose upon her the burden of establishing her case beyond a reasonable doubt. She was only required to convince the jury by a fair preponderance of the evidence that the accident resulted from the negligence of the defendant." As was said by the Court of Civil Appeals, "Mr. Lewis did not know of the immediate step-down as he entered the drug store. He did know that he lost his balance; the door jerked back; his feet slipped and he fell as he went through the door." There was evidence upon which the trial judge could find that his fall was caused by any one or a combination of the unsafe conditions existing at the doorway.

■ We do not agree that Bank should be relieved of liability on the ground that the premises were designed by competent architects under the rule announced in the case of Hamblen v. Mohr, Civ. App., 171 S. W. 2d 168. While the record reflects that the bank building proper was designed by a firm of competent architects, it also appears that the garage building was built before the bank building and there is no evidence to show what architects, or, for that matter that any architects, designed the doorway where the injury occurred. The members of the firm of architects designing the bank building had their offices in Austin at the time of the trial and Bank did not call any of them to show that they designed the doorway in question.

■ We next consider whether the evidence shows conclusively

that plaintiff Lewis was guilty of contributory negligence as a matter of law. Whether he was is to be determined under the following rule laid down by this Court in Gulf, Colorado & S. F. Ry. Co. v. Gasscamp, 69 Texas 545, 7 S. W. 227, and recently quoted with approval in Lang v. Henderson, 147 Texas 353, 215 S. W. 2d 585: "In order that an act shall be deemed negligent per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it."

The evidence set out at the beginning of this opinion details the manner in which Lewis approached and sought to enter and pass through the doorway. There is no need to repeat it here. Lewis testified that he was walking along the wall at the ordinary speed he would use "in a place of that kind"; that he had to be careful with cars passing and that he was looking out for cars to protect himself; that he was keeping a lookout as he walked down the wall; that as he approached the door he was looking at the knob of the door and that he had to turn the knob to get the door open; that "when I came to the door, I caught hold of the knob, opened the door and passed through. As I passed through, the door jerked, my foot slipped, whatever it was on, and I fell and broke my hip." It must be remembered that Lewis was a man sixty eight years of age. The trial judge had a right to indulge reasonable inferences from the facts and circumstances in evidence. It would not have been unreasonable to infer that Lewis used much of his strength to overcome the initial tension of the heavy door and the door closer; that he was caused to lose his equilibrium when the tension on the door suddenly eased; that he found himself confronted with the unsafe condition of the entrance heretofore described with no handrail to catch hold of to break his fall and that he did not have sufficient reserve strength to regain his equilibrium.

We do not think it can be said that plaintiff was guilty of contributory negligence as a matter of law in failing to observe and heed the signs of caution on the door. Even had he seen and read these signs we would not be able to say that the manner in which he sought to pass through the door thereafter was negligent as a matter of law. In the case of Texas & Pac. Ry. Co. v. Day, 145 Texas 277, 197 S. W. 2d 332, this court held that a motorist who drove his automobile on a railroad track in spite of the warning of electrically operated flasher lights was not guilty of contributory negligence as a matter of law, the court saying: "It is obvious that had Day been more cau-

tious, he would not have been injured. But whether the precautions he took amounted to due care was properly left to the jury."

We may add that we agree with the interpretation the Court of Civil Appeals has placed on the plaintiff's testimony to the effect that he stepped "blindly" through the door. Taken in context with the remainder of his testimony we do not regard the statement as an admission by plaintiff that he was not paying any attention whatever to what he was doing or that he was using no care for his own safety.

Viewing the evidence in the light most favorable to the plaintiff as we are required to do, we cannot say, without hesitation or doubt, that the conduct of plaintiff was so opposed to common prudence that no careful person would have conducted himself in the same or a similar manner. We cannot say that plaintiff failed to exercise some care for his own safety. There are recent cases in which this court has held, on similar facts, that the question of contributory negligence was one for determination by the trier of the facts. Blanks v. Southland Hotel Co., 149 Texas 139, 229 S. W. 2d 357; Walgreen-Texas Co. v. Shivers, 137 Texas 493, 154 S. W. 2d 625.

It would extend this opinion to unnecessary length to seek to distinguish all the cases cited by petitioners. The case of Houston National Bank v. Adair, 146 Texas 387, 207 S. W. 2d 374, on which petitioners seem to rely most strongly and in which this Court held, in effect, that an invitee voluntarily exposed herself to risk of injury from defects in the premises which were open and obvious. is easily distinguishable on the facts. In that case there was no evidence that the steps where the plaintiff was injured were worn or uneven nor that the condition of the steps was masked from view by a solid door which snapped back suddenly. Furthermore, in the Adair case it was shown that the plaintiff had often used the steps whereas in this case Lewis had no prior notice of the unsafe condition of the entrance.

■ We come now to a determination of the respective liabilities of Renfro and Bank to each other. As has been said, the trial court allowed Renfro a recovery of complete indemnity against Bank. The Court of Civil Appeals reformed this part of the judgment so as to require each to contribute equally to the payment of the judgment, holding the provisions of Art. 2212, R.C.S., to be applicable.

If the facts are such as to give rise to a right of indemnity in favor of either of the parties Art. 2212 does not apply, for the right of contribution between joint tort-feasors under Art. 2212 arises by the express terms of that statute only where "no right' of contribution or of indemnity, or of recovery, over, by and between the defendants, is given by statute or exists under the common law." Wheeler v. Glazer, 137 Texas 341, 153 S. W. 2d 449, 140 A.L.R. 1301. As between joint tort-feasors not standing in pari delicto with each other, the right of indemnity was held in this state to exist at common law prior to the enactment of Art. 2212. City of San Antonio v. Smith et al., 94 Texas 266, 59 S. W. 1109; City of San Antonio v. Talerico et al., 98 Texas 151, 81 S. W. 518. This was an exception to or a limitation on the general common law rule that joint wrong-doers would not be permitted to recover from each other. It follows that if the facts in this case are such as to entitle Renfro to a full recovery over against Bank by way of indemnity, the Court of Civil Appeals was in error in holding Art. 2212 applicable.

The latest decisions of this court have formulated the rule by which we are to be guided in determining whether Renfro is entitled to indemnity from Bank. In Wheeler v. Glazer, 137 Texas 341, 153 S. W. 2d 449, 452, it is said that "where the injury forming the basis of the judgment against the joint tort-feasors results from a violation of a duty which one of the tort-feasors owes to the other, the latter, at common law, is entitled to contribution or indemnity from the former." See also Austin Road Co. v. Pope, 147 Texas 430, 216 S. W. 2d 563, and Humble Oil & Refining Co. et al v. Martin, 148 Texas 175, 222 S. W. 2d 995.

By the terms of the lease Bank reserved at least joint control with Renfro over the entrance where the injury occurred and, as we have seen, expressly obligated itself to Renfro to keep the entrance in repair. Bank recognized its duty to Renfro under the lease and made repairs and adjustments on the door closer from time to time. We have already said that this duty on the part of Bank extended to the remainder of the entrance. The injury forming the basis of the judgment against Renfro and Bank resulted from a violation of a duty which Bank owed to Renfro. The fact that Bank's duty to repair was incorporated in its lease contract would not preclude it from being held liable for damages for personal injuries in an action ex delicto. Ross v. Haner, supra; 163 ALR 300.

■ While we have been unable to find any Texas cases in point

on the facts and have been cited to none by the parties, a number of cases from other jurisdictions are cited in a note in 157 ALR at page 623 in support of the rule there announced as follows: "Where the lessor or lessee has breached his covenant with respect to the condition of the premises and the covenantee has had a judgment entered against it or has been obliged to pay to third persons a claim for damages caused by such breach, the covenantor must indemnify the covenantee for the loss." It is our opinion that the rule just quoted is a sound rule and, as applied to the facts in this case, compels a judgment of indemnity in favor of Renfro. We hold that the Court of Civil Appeals erred in holding Art. 2212 applicable. We also hold that Renfro is entitled to a recovery over against Bank of any part of the judgment it may be compelled to pay.

■ Much that had been said with reference to the relative rights of Renfro and Bank is equally applicable to Bank's claim to indemnity or contribution from Joseph. It need not be repeated. Assuming that the trial court erred in relieving Joseph of all liability to plaintiff Lewis and that the Court of Civil Appeals was correct in holding Joseph liable to plaintiff, we are nevertheless of the opinion that Bank is entitled to neither indemnity nor contribution from Joseph. The lease of Motoramp Garage to Joseph was made after the lease to Renfro. Bank by its contract with Renfro had already reserved control of the entrance where the injury occurred for the common use of all of its tenants and Joseph was necessarily excluded from control thereof. Some time prior to plaintiff's injury Joseph had sought permission of Bank to close the doorway but Bank had refused. Bank's obligation to keep the entrance in repair had been established by its agreement with Renfro and its contract with Joseph did not alter the obligation. If Joseph had been held liable to plaintiff and were here seeking indemnity from Bank, it would be granted for much the same reasons that it has been granted to Renfro. It follows as a necessary corollary that in the absence of a contractual provision to the contrary, Bank is not entitled to a recovery against Joseph either by way of indemnity or under Art. 2212 by way of contribution.

Bank contends that under paragraph $\overline{XX}$ of its lease agreement with Joseph it is entitled to indemnity from Joseph even though its right thereto would not otherwise exist at common law. Paragraph $\overline{XX}$ of this lease reads as follows:

"The Lessee hereby agrees and binds himself to indemnify and save harmless the Lessor against any liability or loss for any injury or damage to persons or property occurring on the

leased premises, arising out of or resulting from any cause whatsoever; excepting injuries or damages resulting from structural or inherent defects in the building or any cause for which the Lessor would be liable."

On the ground that the foregoing language does not express the true intent of the parties, Bank suggests that we should construe the paragraph as though the phrase "or for any cause for which lessor would be liable" appearing at the end thereof was in fact a part of the agreement of indemnity rather than a part of the exception thereto. As so transposed the paragraph would be made to read as follows: "The Lessee hereby agrees and binds himself to indemnify and save harmless the Lessor against any liability or loss for any injury or damage to persons or property occurring on the leased premises, arising out of or resulting from any cause whatsoever *for which the Lessor would be liable;* excepting injuries or damages resulting from structural or inherent defects in the building."

It is said that there would have been no purpose in requiring indemnity except to protect Bank against loss or liability for injuries arising out of some cause for which it would be liable and that it was not intended that all loss or liability of Bank be excepted from the indemnity agreement. The obvious answer to this contention is that we have no right to make a new contract for the parties. The indemnity agreement and the exception therefrom are stated in clear and unambiguous language. If the parties had intended the agreement to read as herein reconstructed they had it within their power to so write it. 12 Am. Jur. 752, Contracts, sec. 229; 17 CJS 695, Contracts, sec. 296; Magnolia Petroleum Co. v. Connellee et al., Com. App., 11 S. W. 2d 158.

The judgment of the Court of Civil Appeals is reversed in part and the judgment of the district court is affirmed.

Opinion delivered December 6, 1950.

Rehearing overruled February 7, 1951.