**CENTRAL TEXAS IRON WORKS, INC.,**
Appellant,

v.

**RED ARROW FREIGHT LINES, INC.,**
Appellee.

No. 17243.

Court of Civil Appeals of Texas.

Dallas.

Feb. 28, 1969.

Rehearing Denied April 18, 1969.

Frank A. Leffingwell, Dallas, for appellant.

Hugh T. Matthews, Jr., Dallas, for appellee.

BATEMAN, Justice.

This is a suit to recover freight overcharges of $58.45 and statutory attorney's fee. It originated in the justice court and a nonjury trial *de novo* on appeal in the county court at law resulted in a judgment that the plaintiff, Central Texas Iron Works, Inc., take nothing. No findings of fact or conclusions of law were requested or filed. The parties will be designated herein as plaintiff and defendant, respectively, as they were in the trial court.

The sole question in the case is whether the shipments in question consisted of steel

angles, bolts and lumber, for which the prescribed freight rates were 50 per cent of first class ratings on those commodities, or whether they consisted of grandstand parts, for which the rates were substantially higher.

The plaintiff, contending for the lesser rate, takes the position that there is no substantial dispute as to the facts and, by a single point of error, complains that the trial court failed to make proper application of the law to the undisputed facts and erred in refusing to give it judgment for the alleged overcharges.

The defendant says the higher rate, which it charged, was applicable and that in the absence of findings of fact and conclusions of law the judgment must be affirmed if this can be done on any theory raised by the pleadings and supported by any evidence.

■ Since all of these were intrastate shipments, the defendant was bound to charge rates in accordance with tariffs promulgated or approved by the Railroad Commission of Texas. Vernon's Ann.Civ. St., Art. 911b, Sec. 4(a). Certain of these tariffs were in evidence, from which it appears that if the materials shipped consisted merely of iron or steel angles, bolts and nuts and lumber exceeding one-quarter inch in thickness they would fall within "Class 50," but if the materials so shipped in fact consisted of steel or wood grandstands, knocked down, telescoped or collapsed, or parts of such grandstands, they would fall within "Class 70." The "Class 70" rate is 40 per cent higher than the "Class 50" rate. The defendant charged plaintiff the "Class 70" rate. The plaintiff paid these charges under protest and brought this suit to recover the excess over the "Class 50" rate.

■ We must be guided, in the absence of findings of fact and conclusions of law, by the rule announced in City of Abilene v. Meek, 311 S.W.2d 654, 656 (Tex.Civ.App., Eastland 1958, writ ref'd), as follows:

"It is elementary that when the appellant contests the trial court's judgment without requesting findings of fact or conclusions of law, we must assume that the trial court's findings were all in support of its judgment; and the judgment must be affirmed if there is any evidence of probative force to support it upon any theory authorized by law."

We must reject all evidence favorable to the plaintiff, and consider only the facts and circumstances which tend to sustain the judgment. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114 (1950); Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914).

■ There was ample evidence of probative force to support the judgment. The plaintiff's place of business is at Waco, Texas, where it stores large quantities of metal and wooden materials used by it in the manufacture of stadiums, grandstands, bleachers, playground equipment, picnic tables, shelters, etc. It manufactured and sold portable grandstands under the trade name "Move-A-Bout", advertising them by brochures containing pictures thereof fully assembled. In the spring of 1967 it shipped quantities of the materials necessary to assemble these grandstands to five customers, located in various Texas cities, in trucks of the defendant Red Arrow Freight Lines, Inc. These customers understood they were purchasing portable grandstands made of steel and lumber, for that is what they ordered and plaintiff's invoices to them so described the articles. For example, one such invoice described the property as: "1 – 5 Row X 18′ Type T Move-A-Bout Stand." The other invoices had similar descriptions, all relating to "Move-A-Bout Stands" of different sizes.

James C. Sorrells, a vice-president of plaintiff, testified with commendable candor that his company sold the five consignees material "for them to be able to erect a complete grandstand"; that these grandstands "are made of steel framing that would have to be assembled after

arrival at a destination, and then the lumber is used for a seat board and footboard that is put on the frame." When asked why he made out ten bills of lading for five sales * when he knew the shipment would probably be carried and delivered together, he replied: "Because the rate was lower for steel and lumber than it is on grandstands."

It appears also from the undisputed evidence that these pieces of steel and of lumber were all cut exactly to certain sizes, the steel pieces were painted and the wooden pieces were treated or coated with some kind of chemical, and the steel pieces and pieces of lumber had holes bored in them at exactly the proper places to enable the customer to assemble the materials into completed grandstands, merely by bolting them together according to printed instructions which accompanied each shipment. One witness testified that he assembled one of these grandstands without assistance, and that it was not necessary to do any welding, or sawing, or boring of holes or anything else but follow the instructions and bolt it together. Another said, "Well, it came in what I'd call a kit form and we had bolts and nuts and directions on how to put this together." Several witnesses testified that the steel angles and wooden pieces could not be used for any other purpose than to assemble the grandstands.

█ We overrule plaintiff's contention that the materials were not parts of grandstands until after they reached destination and were used by the purchasers in constructing grandstands. We agree with plaintiff that the nature of property shipped must be determined as of the time it is shipped, and cannot properly be made to depend upon the use to which it is put after the transportation has been completed, but it must also be recognized that the use for which articles are purchased

and the use to which they are actually put may properly be considered in determining what they actually were at time of shipment. Crancer v. Lowden, 121 F.2d 645, 649 (8th Cir. 1941).

As said by the Interstate Commerce Commission in Atchison Leather Products Co. v. Atchison, T. & S. F. Ry. Co., 274 I.C.C. 328, 329 (1949):

"In proceedings where the nature of the commodity was in issue, its use has been considered in determining what commodity was shipped."

There being ample evidence to support the trial court's judgment, we affirm the same.

Affirmed.

---

* In each of the five transactions plaintiff prepared two bills of lading; on one it listed the pieces of steel angles and the bolts, and on the other it listed only certain numbers of pieces of "Lumber, native wood, exceeding ¼" thickness."