In the Matter of John Wayne **LITTLE**, a delinquent child, et al., Appellants,

v.

**STATE** of Texas, Appellee.

No. 5220.

Court of Civil Appeals of Texas, Waco.

March 15, 1973.

Dan Francis, Waco, for appellants.

Martin Eichelberger, Dist. Atty., Randall Sellers, Asst. Dist. Atty., Waco, for appellee.

## OPINION

JAMES, Justice.

This is an appeal from an adjudication of juvenile delinquency. John Wayne Little, a male child about ten and one-half years old at the time of trial, was adjudged to be a delinquent child by the trial court sitting without a jury; and in the same judgment the child was placed in the legal custody of the Texas Youth Council for a period of time not to exceed his twenty-first birthday.

The child appeals to this court by and through a Mr. and Mrs. G. L. Weaver as next friends, and attacks the trial court's judgment upon the following grounds: (1.) that said judgment is not supported by the evidence, and (2.) that there is no finding in the judgment that the Appellant-child is guilty as charged in the State's petition. We overrule these points and affirm the trial court's judgment.

In the State's First Amended Original Petition the Appellant-child was charged with the felony offense of robbery by assault against one Fay Ihlenfeldt in language consistent with Article 1408 of the Penal Code of the State of Texas. To be more specific, paragraph I of said petition reads as follows:

"Your Petitioner would show to the Court that on or about the 29th day of September, A. D. 1972, in the County of McLennan, State of Texas, John Wayne Little in and upon Fay Ihlenfeldt did make an assault and did then and there by said assault and by violence, fraudulently and against the will of the said Fay Ihlenfeldt, take from the person and possession of the said Fay Ihlenfeldt, United *State* Currency (italics ours), the same then and there being the personal property of the said Fay Ihlenfeldt, and with the intent then and there to deprive the said Fay Ihlenfeldt of the value of the same and to appropriate the same to the use of him, the said John Wayne Little, against the peace and dignity of the State."

Article 2338–1, Section 3, Vernon's Annotated Texas Civil Statutes provides, among other things, as follows: "The term 'delinquent child' means any child who (a) violates any penal law of this state of the grade of felony; * * *"

The Statement of Facts shows that all the evidence offered was done so by the

State of Texas, and no evidence was offered by or in behalf of the child. The trial court's judgment recites that the child was represented by an attorney and a guardian ad litem, both of whom had been previously appointed by the court; and in addition thereto, the Supervisor of the McLennan County Child Welfare Unit (the legal custodian of the child) and the child's natural mother were present in court.

The pertinent proof made by the State is as follows: The child was born May 16, 1962, and was over ten years of age at the time of the alleged commission of the offense (September 29, 1972); that on said last-named date Fay Ihlenfeldt and her husband Henry Ihlenfeldt lived in a home in McLennan County, Texas, at Route 1, Valley Mills, Texas; that their home was out from town and was a rural or farm home.

Mrs. Fay Ihlenfeldt had left home in their family car about 8:30 A.M. of September 29, 1972, to fulfill a beauty parlor appointment. She testified that her husband was working that day sowing oats in a field not far from their house. She returned home about three o'clock in the afternoon, and immediately noticed that her husband's pickup was not parked in its usual place, and the plastic cover was off of their riding lawn mower. The lawn mower usually was kept in the driveway in front of the pickup. These things immediately attracted her attention and caused her to believe something was wrong. She went in the house to call her husband; and as she got inside the house, a lot of things were piled up around the door, such as dishes, silverware, dog collars, canes and soda water, and appeared to have been made ready for loading. The house looked "like a tornado had gone through."

When she got inside the house and had called her husband, two boys appeared in the hallway, the Appellant-child and a larger boy. Appellant had in his hands a shotgun and the other boy had a rifle. The boys told her: "Lady, this is a stick-up." The shotgun held by Appellant was a 12 gauge shotgun that belonged to her husband, Henry Ihlenfeldt. The boys pointed the guns toward Mrs. Ihlenfeldt and further told her: "We've already killed your husband and got him in the closet and we're going to kill you too. One more don't make any difference." At this point Mrs. Ihlenfeldt screamed "as loud as I could", whereupon the boys told her she could get her head blown off "right this minute" if she wanted to or she could sit down in a chair pointed out by them, and put her purse on the table. At this point Mrs. Ihlenfeldt accidently dropped her purse to the floor but did not pick it up because she was afraid that if she bent over that they would have "knocked her in the head." She testified: "They had a hammer laying on the table." She did sit down in a chair, whereupon the Appellant-child got her purse and sat down on the floor and unzipped all the compartments and looked through same. He found the $40.00 in money she had in her purse and took it, remarking that they "sure didn't have much money." All this time the larger boy was holding a gun on her with his finger on the trigger. She testified she knew the guns were loaded because the Appellant-child showed her the "bullet" in his gun, and told her, "I've got a bullet in this gun and if you don't believe it, I'll show you," and he did.

After the Appellant-child had taken the money from Mrs. Ihlenfeldt's purse, the larger boy told the Appellant-child to "put the stuff in the car," and ordered Mrs. Ihlenfeldt to give him the key to her car. She gave him the car key, and Appellant loaded some of the things that had been stacked near the door leading to the outside. The larger boy began to get nervous, and told Appellant not to take "all the lady's stuff, just get some of it," because they now had money to buy some more. Then the larger boy told Mrs. Ihlenfeldt to "sit there until they got away." The boys got in the car and drove off. Mrs. Ihlenfeldt sat there until she "saw the dust go over the hill and out to the highway"; and as soon as the car was out of sight, she found her husband's dead body in a

closet. Also in the closet were items which had been dumped out of dresser drawers. Lipstick had been used to mark up white carpet, and liquids had been poured on the carpet, dresser drawers were on the floor, furniture was "busted up", and the telephone had been demolished and severed from the line. Mrs. Ihlenfeldt ran on foot to a neighbor's house to call for help.

At the conclusion of the evidence, the trial court stated: "The Court is going to find that the said John Wayne Little committed a delinquent act and declares him to be a delinquent child."

■ In the case at bar, since the Appellant-child was charged with violation of a criminal law (robbery by assault) as the basis for having him adjudged a delinquent child, the State was under the duty to prove every element of the offense of robbery by assault as charged in the State's petition beyond a reasonable doubt. In Re Winship (1970) 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. This doctrine as announced in *Winship* was specifically applied by the United States Supreme Court to the Texas case of State of Texas v. Santana (Tex.Sup.Ct.1969) 444 S.W.2d 614, wherein the United States Supreme Court granted a writ of certiorari to the Supreme Court of Texas. See Santana v. Texas (1970) 397 U.S. 596, 90 S.Ct. 1350, 25 L.Ed.2d 594, subsequent to which last-named cause the Supreme Court of Texas on remand handed down its opinion in said cause in 457 S.W.2d 275.

■ We have carefully examined the record in the case at bar, and are of the opinion that the State of Texas has met and discharged its burden of proof, and has proved the Appellant-child's guilt of the felony offense of robbery by assault and every element thereof as charged in the State's petition beyond a reasonable doubt. We therefore overrule Appellant's first contention.

By the Appellant's second contention he asserts the trial court erred in finding the Appellant to be a delinquent child because there was no finding in the judgment that

the Appellant is guilty of robbery by assault as charged in the State's First Amended Original Petition. We overrule this contention. Since the State has met its burden of proof by proving the Appellant's guilt beyond a reasonable doubt of the felony offense charged in the petition, as heretofore pointed out in this opinion, the trial court's judgment implies all necessary fact findings in support of the judgment. Renfro Drug Co. v. Lewis (1950) 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114. Also see Rule 301, Texas Rules of Civil Procedure; Article 2338–1, Section 13, Vernon's Annotated Texas Civil Statutes.

Judgment of the trial court is affirmed.

Affirmed.