**Lloyd CHARPING, Individually and d/b/a Charping Construction Company, Appellant,**

v.

**Glenn LIGHT et al., Appellees.**

No. 12860.

Court of Civil Appeals of Texas, Austin.

Feb. 21, 1979.

Davis Bragg, Bragg, Barron & Phillips, Killeen, for appellant.

James O. Cure, Temple, for appellees.

SHANNON, Justice.

Appellees Glenn Light and his mother, Ida V. Light, sued appellant Lloyd Charping in the district court of Bell County. Appellees sought treble damages for alleged violation of Tex.Bus. & Comm.Code Ann. § 17.41 *et seq.* (Supp.1978), the Deceptive Trade Practices—Consumer Protection Act. After trial to a jury, the district court entered judgment for appellees for $6,300.00 damages, that sum representing three times the amount of actual damages, and $4,500.00 attorney's fees. We will affirm the judgment.

Appellant called upon appellees at their house in Temple on April 27, 1977. The purpose of appellant's call was to persuade appellees to enter into a contract for appellant to install steel siding on appellees' house. Appellant was successful in convincing appellees of the need for the siding job, and on the same day appellees signed a form contract for the purchase and installation of the siding for $4,280.00. Appellant testified, and appellees denied, that he told appellees they had a right to cancel the contract. It is undisputed that the Lights signed two documents furnished by appellant that set out appellees' right to cancel or rescind the contract within a certain period of time.

After a few minutes reflection, appellees decided that the contract price was too high and that they were unable to afford the siding job. Appellees accordingly told appellant that they wished to cancel the contract. Appellant became angry and, according to appellees, refused to agree to a cancellation of the agreement, but offered to do the siding job in exchange for Glenn Light's 1976 pickup truck. The truck had been damaged in a collision and was at that time in a repair shop. A part of the proposed trade was that Light would pay the costs of repair of the truck from the proceeds of his collision insurance policy. Appellees testified that appellant persuaded them to agree to the new trade, although the value of the pickup, when repaired, was $5,250.00. Glenn Light transferred title to the pickup to appellant.

Within two days and after consultation with their builder, appellees had second thoughts about their need for the siding job. Ida called appellant to cancel the siding contract. Appellant or his secretary told Ida that the contract could not be canceled, that appellant had already ordered the siding, and that the pickup truck had already been sold.

Ida Light claimed she had several telephone conversations with appellant or his secretary concerning the price appellant would pay appellees for the pickup if he did not do the siding job. Appellant finally offered $2,166. According to Ida, appellant's secretary told her that the Lights could accept $2,166 or receive nothing at all for the truck. Appellees, pleaded that on May 6, Ida, under duress, accepted for her son appellant's draft in the sum of $2,166.00 in payment for the truck and signed a release of any claims she or her son might have had that arose from the siding job contract.

Appellant testified that appellees signed the contract for the siding job for a consideration of $4,280. In every other major respect, appellant's testimony concerning his transaction with appellees conflicted with appellees' evidence.

Appellees pleaded that appellant violated § 17.46 of the Deceptive Trade Practices Act by representing to them that they had no right to cancel the agreement by the terms of which they traded the pickup for the siding job. Appellees pleaded that by virtue of Tex.Rev.Civ.Stat.Ann. art. 5069–13.02 (Supp.1978), they were entitled to cancel the contract at any time prior to midnight of the third business day after the contract was executed.

The charge of the court contained thirteen special issues. The jury answered, *inter alia*, that appellant misrepresented to appellees their right to cancel the contract. The jury also found that appellant's action or course of action by which he obtained the pickup truck was "unconscionable." Appel-

lees were adversely affected by both appellant's misrepresentation and his "course of action," and such misrepresentation and course of action were producing causes of appellees' damage. The jury answered further that appellees accepted payment for the pickup truck and signed the release under duress.

"Duress" was defined in the charge as existing ". . . where one possessing and exercising the power of physical position or of financial advantage over another compels him by any of such means to do or to refrain from doing some act contrary to his own free will or to submit to a situation or conditions against his own volition or interests." Appellant did not object to the court's definition of duress.

■ Appellant's single point of error is that "[t]he evidence is insufficient as a matter of law that Appellees were under duress from Appellant at the time of the accord and satisfaction." Appellant's point of error, standing alone, does not indicate whether appellant is complaining that there was "no evidence" or that there was "insufficient evidence" to support the jury's finding with respect to duress. Further analysis is required. The controlling consideration in ascertaining the character of a point of error directed to the state of the evidence is not whether the point uses the preferable, or even the proper, terminology, but instead whether the point is based upon and related to a particular procedural step in the trial and appellate process and is a predicate for the relief sought in the appellate court. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361, 362 (1960).

■ "No evidence" points are points which call for reversal of a trial court's judgment and *rendition* of judgment for appellant. "Insufficient evidence" points of error are those which call for a reversal of the trial court's judgment and *remand* of the cause for retrial. Calvert, *id.*, 362, 365. The rules with respect to the relief sought are not helpful in determination of the character of appellant's point since an examination of appellant's brief shows that it contains no prayer for either rendition or remand.

■ The procedural foundation for appellant's point of error is his motion for judgment *non obstante veredicto*. It is, accordingly, a "no evidence" point and the fact that the point speaks of "insufficient evidence" cannot make it otherwise. Calvert, *id.*, 362.

Appellant relies upon the definition of duress as found in *Dale v. Simon*, 267 S.W. 467 (Tex.Com.App.1924, jdgmt. adopted); and *Lawrence v. J. M. Huber Corporation*, 347 S.W.2d 5, 6 (Tex.Civ.App.1961, no writ). In *Lawrence*, Justice Frank Wilson wrote with respect to duress:

> " 'There can be no duress unless [1] there is a threat to do some act which the party threatening has no legal right to do. [2] Such threat must be of such character as to destroy the free agency of the party to whom it is directed. It must overcome his will and cause him to do that which he would not otherwise do, and which he was not legally bound to do. [3] The restraint caused by such threat must be imminent. [4] It must be such that the person to whom it is directed has no present means of protection.' [5] Where the demand is wrongful and it is necessary for the demanding party to resort to the courts to enforce it, there is no duress. [6] 'But where the party making the demand has, or is supposed to have, the power to injure the business or property interests of the one upon whom the demand is made, without resort to the courts to enforce the demand, and threatens to do an act which would cause such injury, and which he has no right to do, and thereby enforces compliance with his demand, [7] against the will of such party through fear of injury to his business or property * * *, such threats amount to duress, [8] if it appears that the party making such demand * * * ought not in good conscience to retain the benefit received by reason thereof.' *Dale v. Simon*, Tex.Com.App., 267 S.W. 467, 470, adopted."

Appellees' evidence of duress was that appellant's secretary told Ida Light that she and her son could accept the $2,166 tendered for the truck or receive nothing at all. Mrs. Light testified that she accepted the check and signed the release even though she felt her son was not receiving enough money for the truck, because ". . . we were afraid that his secretary said that if we didn't take that, well, didn't think we'd get anything at all, so we were kind of afraid that we wouldn't get anything for the truck."

■ Appellant argues that the evidence just referred to does not constitute duress as defined in *Dale v. Simon, supra,* and in *Lawrence v. J. M. Huber Corporation, supra.* That may be true. The charge in this case, however, did not submit duress as defined in *Dale* and *Lawrence.* Duress, as defined in the court's charge, was submitted in terms more general and less rigorous than in *Dale* and *Lawrence.* Appellant must have been satisfied with the court's definition when it was given since he voiced no objection. Any error in the definition of duress was waived by appellant's failure to object. Tex.R.Civ.P. 274.

■ We next examine the record to ascertain whether there exists evidence of duress as defined by the court's charge. In considering a "no evidence" point, the reviewing court must reject all evidence contrary to the jury's findings and consider only the facts and circumstances which tend to support those findings. *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (1950); *Cartwright v. Canode,* 106 Tex. 502, 171 S.W. 696 (1914). Appellant had possession of and title to the pickup truck. Through his agent, appellant told the Lights that they could take what money he offered for the truck or they would get nothing at all. Ida Light believed that she had no choice but to take the sum tendered or receive nothing. She knew that the truck had already been sold. Viewing the evidence most favorably to the jury's finding, we must conclude that there is *some* evidence in support of the jury's finding that appellees accepted payment for the truck and signed the release under duress, as defined in the charge.

The judgment is affirmed.