Jeanne O. JOHNSON, Appellant,

v.

TOM THUMB STORES, INC. and Timber Joint Venture, Appellees.

No. 05–88–00434–CV.

Court of Appeals of Texas, Dallas.

April 25, 1989.

Rehearing Denied June 5, 1989.

W.W. Mitchell, II, James L. Baldwin, Jr., Dallas, for appellant.

James H. Holmes, III, Joann N. Wilkins, for appellee Tom Thumb Stores, Inc.

Mark M. Donheiser, Jeffrey R. Seckel, Phillip W. Gilbert, Dallas, for appellee Timber Joint Venture.

Before McCLUNG, BAKER and KINKEADE, JJ.

BAKER, Justice.

In this slip and fall case, we affirm the judgment as to Tom Thumb Stores, Inc. and reverse the judgment as to Timber Joint Venture and remand for a new trial.

This action was brought by Jeanne O. Johnson for damages for personal injuries sustained by her when she fell in front of the store leased by Tom Thumb from the landlord Timber. When Ms. Johnson rested her case, the trial court granted a directed verdict in ·favor of the tenant Tom Thumb. The trial proceeded against the landlord Timber. A jury found Ms. Johnson and Timber were each fifty percent negligent and awarded Ms. Johnson damages for past medical expenses and past lost earnings. The jury awarded no damages for past or future pain and suffering and physical impairment or for future lost earnings or future medical expenses. The trial court refused to grant Ms. Johnson a new trial, and this appeal results.

Ms. Johnson asserts five points of error. Points one and two assert that the jury's failure to find physical impairment and

pain in the past, and its failure to find future pain, loss of earning capacity, and physical impairment is so against the great weight and preponderance of the evidence as to be manifestly unjust and clearly wrong. In points three, four, and five, Ms. Johnson contends that the trial court erred in granting Tom Thumb's motion for directed verdict because there was evidence that Tom Thumb knew about the dangerous conditions existing in front of its store and had a duty to warn patrons of the conditions, that there was evidence that Tom Thumb controlled and maintained the sidewalks, walkways, and entranceway to the store, and that there was evidence that Tom Thumb had knowledge of the dangerous condition and failed to notify Timber so the condition could be corrected or eliminated.

We first consider the points concerning Tom Thumb. Ms. Johnson allegedly slipped on a light fixture imbedded in the sidewalk and broke her hip. The sidewalk where the light fixture was located was part of the common area in a shopping center owned by Timber. Tom Thumb leased a portion of the center, which was adjacent to the common area where Ms. Johnson fell. It was stipulated that Tom Thumb was operating the store under a lease agreement with Timber, which lease provides that Timber was responsible for and had control over the common areas of the shopping center. Ms. Johnson fell on the sidewalk some ten feet from the entrance to Tom Thumb's store. The area where Ms. Johnson fell is part of the common area contemplated by the lease between Tom Thumb and Timber.

Ms. Johnson contends that the evidence shows that Tom Thumb had actual knowledge of the dangerous condition prior to her fall. At trial, Ken Kollasch, co-assistant grocery manager of Tom Thumb, testified that he had slipped and fallen on a similar imbedded light at another place in the sidewalk. Mr. Kollasch testified that following Ms. Johnson's fall, he helped her up and told her that he had previously slipped on a similar light. There was additional testimony by Mr. Kollasch that he notified his supervisor at Tom Thumb about his fall. There was also testimony that Tom Thumb did not report this information to Timber. Ms. Johnson contends that the evidence at trial was clear that Tom Thumb knew about the dangerous nature of the imbedded light fixture in the common area and yet failed to take preventative measures to warn its patrons or Timber so that the danger could be eliminated. Ms. Johnson argues that Tom Thumb owed a duty to her about the light fixture in the common area because of the general rule that an owner/occupier of premises owes a duty to its invitees to keep premises in a reasonably safe condition and to warn of dangerous conditions. Ms. Johnson also contends that Tom Thumb assumed a duty by its control and maintenance of the area. Finally, she contends that Tom Thumb owed her a duty to convey the knowledge it had of the light fixture to Timber.

When Tom Thumb moved for a directed verdict at the close of Ms. Johnson's case, Tom Thumb relied on this Court's opinion in *Howe v. Kroger Co.*, 598 S.W.2d 929 (Tex.Civ.App.—Dallas 1980, no writ). Tom Thumb cited *Howe* for the proposition that if the lease relieves the tenant of any responsibility for maintenance of sidewalks, then the tenant has no duty to third parties, even invitees, to keep the sidewalks free from dangerous conditions. *See Howe*, 598 S.W.2d at 931. Ms. Johnson concedes that the lease agreement provides that responsibility for maintaining the common areas, including the sidewalk where the light fixture is located, falls upon Timber. However, Ms. Johnson contends that *Howe* is not dispositive of this case because there are other cases where liability has been imposed upon a tenant for injury occurring outside of the premises actually under control. Ms. Johnson first relies on the Texas Supreme Court case of *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950), in support of her position that Tom Thumb's duty extended beyond the leased premises to include an area under the exclusive control of another. The *Renfro* case is distinguishable. In *Renfro*, the dangerous condition that brought about the injury was a doorway

common to a motor garage and the Renfro drugstore. This fact contrasts to the facts in this case where the alleged dangerous condition is only part of the common area and not a part of an entranceway contiguous to Tom Thumb's leased premises. Secondly, the lease agreement specifically provided that the tenant, the drugstore, agreed to keep a passageway open at all times during the hours the drugstore was open for business between the motor garage, the drugstore, and the rest of the building. The owner of the building, a bank, was obligated to keep "corridors, halls, and entrances" leading to the drugstore's premises in good repair. The supreme court held that the provisions of the lease did not vest such exclusive control of the passageway in the landlord as to relieve the tenant of its duty of care to its invitees. We reject Ms. Johnson's argument that *Renfro* supports her position.

In her brief, Ms. Johnson relies upon opinions of other courts of appeal to support her argument that liability has been imposed upon a tenant for injury occurring outside the premises under the tenant's control. *See Northwest Mall, Inc. v. Lubri-Lon Int'l, Inc.,* 681 S.W.2d 797 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Joseph v. Jet Air Freight Corp.,* 479 S.W.2d 325 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.); *Parking, Inc. v. Dalrymple,* 375 S.W.2d 758 (Tex.Civ.App.—San Antonio 1964, no writ); *Chapman v. Parking, Inc.,* 329 S.W.2d 439 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.). Tom Thumb, at trial and before this Court, relies on this Court's holding in the *Howe* case. At oral argument it was conceded by Ms. Johnson that resolution of the issue depended on whether this Court would follow *Howe* or whether it would follow what Ms. Johnson contends to be an extension of a tenant's liability as set out in the cases she relies on.

In *Howe* this Court affirmed summary judgment in Kroger's favor and held:

> [A]n occupier of premises owes to his invitees a duty of ordinary care, which encompasses the duties to maintain those premises in reasonably safe condition and to warn of dangerous conditions on

the premises. This duty, however, extends only to the limits of those premises and not beyond. We conclude that an occupier of premises has no greater duty than does the public generally regarding conditions existing outside his premises and not caused by the occupier. *See Abalos v. Oil Development Co.,* 544 S.W.2d 627, 633 (Tex.1976) (bystander not required to prevent injury to others).

*Howe,* 598 S.W.2d at 931. We concluded in *Howe* that under the lease agreement between Kroger and the premises' owner, the area where the plaintiff fell was a part of the common area for which the landlord was responsible. Therefore, Kroger "had no liability regarding injuries occurring on the sidewalk because no duty existed relative to areas outside the leased premises." *Howe,* 598 S.W.2d at 931. We decline Ms. Johnson's invitation to disregard *Howe,* and we hold that the *Howe* rationale is applicable under the facts of this case. We overrule Ms. Johnson's points of error numbers three, four, and five.

Before we consider Ms. Johnson's remaining two points of error complaining about the jury's failure to find in her favor for additional damages, we must first consider Timber's first reply point and Timber's second cross point of error.

■ In its first reply point, Timber contends that Ms. Johnson has failed to preserve her factual insufficiency points of error because her motion for new trial was filed before the trial court entered judgment. Timber argues that the points were not preserved because the trial court overruled her prematurely filed motion for new trial in the same instrument that granted the judgment and because the trial court's decision to deny the motion for new trial does not specify the grounds for such order. Timber contends that this Court should presume that the trial court denied Ms. Johnson's motion for new trial because the trial court felt compelled to grant judgment on the verdict before considering the factual insufficiency of the evidence. Timber argues that since the factual insufficiency points were not reurged after the

trial court rendered judgment, we should presume that the trial court did not have the opportunity to rule on the merits of these points. Timber also argues that the overruled motion for new trial is ineffective, relying on this Court's decision in *A.G. Solar & Co. v. Nordyke*, 744 S.W.2d 646 (Tex.App.—Dallas 1988, no writ).

We do not agree that *Solar* controls because *Solar* is readily distinguishable from this case. In *Solar*, the trial court entered a judgment on March 26, 1987. On April 27, Solar filed a motion for new trial and in a separate instrument a motion to correct and reform the adverse judgment. The trial court took no action on either of Solar's motions, and on June 9, 1987, both motions were overruled by operation of law under rule 329b(c) of the Texas Rules of Civil Procedure. However, on June 30, 1987, and still within the period of the trial court's plenary jurisdiction, the trial court corrected its judgment by reducing both actual and exemplary damages. On September 22, 1987, without having filed another motion for new trial attacking the June 30 judgment, Solar filed a cost bond. The issue in *Solar* was whether the cost bond was timely filed. We held that when a premature motion for new trial has already been disposed of, it can no longer "assail" a subsequent judgment under rule 306c of the Texas Rules of Civil Procedure and can no longer "be properly applied" to that judgment under rule 58 of the Texas Rules of Appellate Procedure. *See Solar*, 744 S.W.2d at 647–48. From these facts it is readily apparent that the pending motion for new trial was overruled and no longer viable at the time the trial court entered the subsequent corrected judgment. Such is not the case here.

However, Timber argues that because the trial court overruled the premature motion for new trial in the same instrument that granted the judgment, rule 306c does not apply. We disagree. It is clear from the express terms of rule 306c that no motion for new trial shall be held ineffective because prematurely filed. TEX.R. CIV.P. 306c. That rule further establishes a presumption that every such premature motion shall be deemed to have been filed on the date of but subsequent to the signing of the judgment that the motion assails. Since we have only one judgment in this case, Ms. Johnson's premature motion could only be directed to that judgment. The mere fact that Ms. Johnson's motion was overruled in the same instrument that granted the judgment, does not, in our view, overcome the presumption that the motion for new trial is deemed to have been filed on the date of but subsequent to the signing of the judgment. TEX.R. CIV.P. 306c.

Secondly, Timber argues that the trial court's decision to deny the motion for new trial should be supported on any grounds since the judgment does not specify the reasons that the motion for new trial was overruled. Timber contends that we should presume that the trial court denied the motion because it felt compelled to grant judgment on the verdict before considering the factual sufficiency of the evidence. We disagree. In our view, the inference to be granted from the trial court's action is that the trial court considered the specific grounds raised by Ms. Johnson in her motion for new trial and rejected them when it entered judgment on the verdict. We conclude that rule 306c does apply in this situation and that Ms. Johnson has properly preserved her insufficiency points.

■ In Timber's second cross point, it complains that we erred when we entered our order of July 29, 1988, striking Timber's cost bond for appeal and that we should vacate that order. This order struck Timber's bond on the authority of *A.G. Solar & Co. v. Nordyke*. We agree that the rationale of *Solar* is not applicable to this case, and rule 306c of the Texas Rules of Civil Procedure is applicable to make Ms. Johnson's motion for new trial available to Timber for an extension of time within which to file its appeal bond on its cross point of error. *See* TEX.R.CIV.P. 306c; TEX.R.APP.P. 41(a)(1). We vacate our order of July 29, 1988, and reinstate the cross appeal. We will consider Timber's cross point number one on the merits.

In her points of error one and two, Ms. Johnson contends that the jury's finding that she experienced no physical impairment and pain in the past and that she would incur no future physical pain, loss of earning capacity, and physical impairment is so against the great weight and preponderance of the evidence as to be manifestly unjust and clearly wrong. In answer to questions concerning these aspects of her damages, the jury answered "none." Ms. Johnson argues that there was uncontradicted testimony from her, two fact witnesses, and three treating physicians that she experienced a broken hip, physical impairment, pain and suffering, as well as further uncontradicted testimony that she can no longer work, and is experiencing continuing pain and physical impairment resulting from the fall. She argues that the jury's answer of "none" to these questions is against the greater weight and preponderance of the evidence, and that as a matter of law she is entitled to have the judgment reversed and the cause remanded for a new trial. *See Jacobs v. York*, 662 S.W.2d 137 (Tex.App.—Fort Worth 1983, no writ); *Hammond v. Estate of Rimmer*, 643 S.W.2d 222 (Tex.App.—Eastland 1982, writ ref'd n.r.e.); *Dupree v. Blackmon*, 481 S.W.2d 216 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.).

In its brief, Timber states that if Ms. Johnson's first point of error is properly preserved, it is meritorious, and Timber confesses error. Since we have held the point properly preserved, there is error. However, Timber contends in its reply point three and its cross point one that there is no evidence to support the finding that Timber was negligent. Timber argues that any error preserved in Ms. Johnson's points one and two was harmless and that the trial court's judgment should be affirmed, or that because of no evidence of Timber's negligence, judgment should be rendered in its favor.

We do not quarrel with Timber's contention that this type of case is a simple negligence action and that in order to recover, Ms. Johnson had to prove (1) that Timber had actual or constructive knowledge of the condition and (2) that the condition imposed an unreasonable risk of harm to invitees. *See Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295–96 (Tex.1983). Timber concedes that constructive knowledge can be found if a reasonably careful inspection would have revealed an unreasonable risk. *Corbin*, 648 S.W.2d at 295; *see also Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 454–55 (Tex.1972).

Timber argues that there is no evidence that it had actual knowledge of the alleged hazardous light fixture. As argued by Timber, the issue is one of constructive knowledge—that is, that which a reasonable inspection would have revealed. *Corbin*, 648 S.W.2d at 295; *see Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752, 754 (Tex.1970); *Robert E. McKee, General Contractor v. Patterson*, 153 Tex. 517, 271 S.W.2d 391, 395 (1954). Timber argues that it or its agents conducted weekly or bi-weekly inspections of the common areas which included the alleged defective light fixture. Timber contends that these inspections never showed any unreasonable risks. Timber argues that its evidence shows that its inspections were reasonable, that an inspection conducted the day before the accident revealed no problems, and that an individual who conducted some of the inspections testified that she walked all across these same lights and, even when wet, did not find them slippery. Timber argues that the only evidence presented that a reasonable inspection would have revealed an unreasonably dangerous condition is the very fall that is the subject of the lawsuit and that this is no evidence at all to support the jury's findings of its liability.

A condition presenting an unreasonable risk of harm is defined as one in which there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen. *Seideneck*, 451 S.W.2d at 754. An owner can be charged with [constructive] knowledge and appreciation of a dangerous condition on its premises if from a reasonable inspection a reasonably prudent person would have foreseen a probability that the condition

would result in injury to another. *See* Restatement (Second) of Torts § 343(a) (1965). Because an owner is charged with knowledge of any dangerous condition that a reasonable inspection would have revealed, a plaintiff must show through a finding of fact that the owner "knew or should have known of the existence of the condition and that [it] should have appreciated its dangers." *McKee,* 271 S.W.2d at 395.

Timber's contention is that there is no evidence to show constructive knowledge. In deciding a "no evidence" point, which is a question of law, we consider only that evidence and reasonable inferences therefrom which viewed in its most favorable light supports the jury finding, and we must reject all evidence or reasonable inferences to the contrary. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex. 1981); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

Kenneth Kollasch testified that on a prior occasion he had slipped on a similar light fixture in another area by the Tom Thumb store. He testified that the light fixture he slipped on was just like the one involved with Ms. Johnson's accident. Mr. Kollasch testified that he knew before Ms. Johnson's accident that the light fixtures get real slippery when they have dew on them. He acknowledged that the fixtures would get real slick when there was dew on them even though the surrounding sidewalk would be dry. Mr. Kollasch testified that he saw Ms. Johnson lying on the sidewalk and approached her to attempt to assist her to get up. He noticed before the accident that the sidewalk was dry and that when he saw Ms. Johnson, she was lying near the light fixture. He testified that Ms. Johnson told him she slipped and fell on the light fixture. At that time he told Ms. Johnson that he had previously slipped on one of the light fixtures before. He examined the particular fixture that Ms. Johnson slipped on to see if it was wet or dry and found it damp to the touch. He further stated that he couldn't tell by looking at the glass surface of the light fixture that it was slippery, but he could tell by touching it or placing his foot on the surface that it was slippery. Mr. Kollasch further testified that he concluded that the reason why the glass surface was slippery was because of dew and not because of some other liquid having been spilled on the glass surface.

Ms. Johnson testified that she did not initially observe any moisture on the glass surface of the light when she placed her left foot on it and that when Mr. Kollasch and the bread man helped her up, she reported to them that the glass surface was still slippery. She stated that at the time Mr. Kollasch said he had previously slipped on a similar fixture. She further testified that after she fell, the surface was still wet, and she observed Mr. Kollasch touch the light.

Diane Nix, an employee of the property management company for Timber, was one of the individuals responsible for inspecting and examining Timber's property. She testified that she conducted a weekly or biweekly inspection of the property and physically inspected it. She testified that she had no opinion as to whether the light fixture surfaces were slippery when they were wet and that she could not say whether they were slippery or not.

Ms. Johnson's testimony that the surface of the fixture was wet and that she fell because she slipped on the wet surface is some evidence that she did in fact slip because the surface was wet, and it is enough that a jury could reasonably infer that the wet surface was the cause of the fall. *See Seideneck,* 451 S.W.2d at 754. There are allegations that the light fixture condition was a dangerous one and evidence that when dew collected on the surface of the light fixture, it was slippery. There is evidence in the record that someone had previously slipped on a similar light fixture in the same area. Evidence of another fall attributable to the same condition is probative, although not conclusive, on the issue. *See Seideneck,* 451 S.W.2d at 754. Based upon the record before us, we are unable to conclude that the evidence offered to prove the vital fact in issue is so weak as to do no more than create a mere surmise or suspicion and that it is in legal effect no evidence. *See Joske v. Irvine,* 91

Tex. 574, 44 S.W. 1059, 1063 (1898). As stated by our supreme court in *Seideneck,* the question of whether there is more than a scintilla of evidence to support the jury's finding of a vital fact is often close. *See Seideneck,* 451 S.W.2d at 755. Such is the case here. However, we are of the opinion that the jury could infer from the evidence that the inspections conducted by Timber were not reasonable, and when the evidence and the reasonable inferences therefrom are viewed in the light most favorable to the verdict, there is some evidence to support the jury's finding. We overrule Timber's reply point number three and Timber's cross point number one.

We vacate our prior order of July 29, 1988, dismissing Timber's cross appeal. We affirm the trial court's judgment directing a verdict in favor of Tom Thumb Stores, Inc. We reverse the trial court's judgment against Timber Joint Venture and remand that cause for a new trial.