**WAL–MART STORES, INC., Individually and Wal–Mart Stores, Inc. d/b/a Sam's Wholesale Club, Appellants,**

v.

**Sarah ALEXANDER and Sam Alexander, Appellees.**

**No. 13–91–392–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 20, 1992.

Rehearing Overruled March 19, 1992.

grossly negligent. It awarded $285,000 for Mrs. Alexander's damages, $105,000 for Mr. Alexander's loss of household services and loss of consortium, and $400,000 as exemplary damages. The trial court originally entered judgment on the verdict, then reformed its judgment, reducing its award to Mrs. Alexander by $100,000. Wal–Mart Stores, Inc., individually and Wal–Mart Stores, Inc. d/b/a Sam's Wholesale Club (Sam's) raise six points of error, challenging the denial of their motion for judgment notwithstanding the verdict, the sufficiency of the evidence on certain issues, the admission of particular evidence, the submission of particular special issues, and the jury's use of a dictionary during deliberations. We affirm the trial court's judgment.

■ Point one attacks the entry of judgment on the verdict. For appellate purposes, a complaint that the trial court erred in refusing to grant a judgment notwithstanding the verdict raises only a no evidence point. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 241–42 (Tex.1988); *see Northwest Mall, Inc. v. Lubri–Lon Internat'l, Inc.,* 681 S.W.2d 797, 801 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). In deciding a no evidence point, an appellate court must consider only the evidence and inferences tending to support the jury finding and disregard all evidence and inferences to the contrary. *Sherman,* 760 S.W.2d at 242.

Where Mrs. Alexander fell and broke her hip, the ramp was five-eighths of an inch higher than the abutting asphalt. Sam's had leased the Brownsville, Texas, building from Roy L. Martin and Associates (Martin) in April 1988, and the lease required Martin to maintain the common areas of the shopping center in which the store was located. Before moving in, Sam's built a vestibule and concrete ramp connecting its entrance to the parking lot. Martin then repaved the parking lot up to the concrete ramp. The store opened on October 11,

J.Preston Wrotenbery, Hirsch Glover Robinson & Sheiness, Houston, David R. McAtee, Kelly Crawford, Gibson Dunn & Crutcher, Dallas, for appellants.

Melchor Chavez, Brownsville, Jeffrey L. Jackson, San Benito, for appellees.

Before NYE, C.J., and FEDERICO G. HINOJOSA, Jr., and BISSETT[1], JJ.

## OPINION

NYE, Chief Justice.

Plaintiff Sarah Alexander fell after tripping on a ridge where an entry ramp to a Sam's Wholesale Club store was higher than the adjoining parking lot. The jury found Sam's to be 100% negligent and

---

**1.** Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1989).

1988, and Mrs. Alexander fell on January 21, 1989.

Sam's attacks the jury's finding that it was negligent by arguing that it owed no duty to Mrs. Alexander. Sam's relies on its lease from Martin, by which it expressly leased only the interior of the store (from the exterior walls inward), and which provides that Martin must maintain the sidewalks, driveways, and parking lots. It argues that only the owner or occupier of business premises owed a duty of ordinary care to its invitees, that it (Sam's) did not own or control the place where Mrs. Alexander fell, or create the condition, and thus, as a matter of law, Sam's is not liable to Mrs. Alexander. Sam's contends that Martin's paving created the ridge, and denies that Mrs. Alexander proved that Sam's owned or controlled the ridge where she fell. Under Sam's theory, only Martin, to whom the jury ascribed no negligence, owed Mrs. Alexander a duty of care at the site of her fall. (Sam's further argues that under the law, its knowledge of the defect is not relevant.)

Sam's cites cases for the proposition that an occupier is not liable for injuries to its invitee if the injuries do not occur on its leased premises. The Alexanders reply that a business has a duty to its invitees to provide safe access and not to cause a dangerous condition, and that Sam's controlled the area where Mrs. Alexander fell. They argue that the lease does not apply to them because they are not parties to it.

■ While case law supports the proposition that an occupier of premises' duty extends beyond the rented premises to the entrances and exits of the premises, even when not under the exclusive control of the occupier, we need not rely on this. *See Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609, 617 (1950); *Joseph v. Jet Air Freight Corp.,* 479 S.W.2d 325, 327 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.). The overwhelming evidence shows that Sam's actively possessed and controlled the area in which Mrs. Alexander fell.

Martin's agent, William Kent Martin, testified that Sam's built the ramp without informing the Martins and continued to possess the building, vestibule, and ramp leading into the store. Other evidence showed that after building the ramp onto the parking lot that led up to the store's entrance, Sam's responded to traffic problems near the entrance by, under its own authority and with its own funds, building speed bumps and later placing concrete car stops near the ramp. Only Sam's used the ramp; it was not shared with other stores. The evidence shows that Sam's created the dangerous condition and controlled the place where Mrs. Alexander fell.

Sam's cites as controlling *Howe v. Kroger Co.,* 598 S.W.2d 929 (Tex.Civ.App.—Dallas 1980, no writ) and *Johnson v. Tom Thumb Stores, Inc.,* 771 S.W.2d 582 (Tex. App.—Dallas 1989, writ denied). In *Howe,* the appellate court affirmed a summary judgment for the defendant store after plaintiff Howe fell on ice on the walk outside the store. The store had leased its premises from a landlord who agreed in the lease to be responsible for maintenance of all common areas used jointly by all of the tenants, customers, invitees, and employees. The court held that under the lease, the store had no control over the area, and thus no duty to maintain it in a reasonably safe condition or to warn its business invitees of dangerous conditions. The reasoning in *Howe* goes back to the general rule that liability follows control. *Howe,* 598 S.W.2d at 930; *see* Restatement (Second) of Torts, §§ 328E, 360 (1965). The court also states, "We conclude that an occupier of premises has no greater duty than does the public generally regarding conditions existing outside his premises *and not caused by the occupier." Howe,* 598 S.W.2d at 931 (emphasis added). In the case at bar, but for Sam's' installation of the ramp, Mrs. Alexander would not have had the ridge to trip on. The jury could have found that Sam's caused the condition. Certainly, evidence supports a conclusion that Sam's took control of the ramp and ramp area of the parking lot. Since liability follows control, *Howe's* reasoning actually supports the Alexanders' position.

*Johnson* is also factually distinguishable. There, a customer fell on a light fixture installed in a sidewalk outside of the store. Again, the store leased from a landlord who agreed to maintain the areas common to its multiple tenants. Nothing shows that the store installed, maintained, or controlled the light or sidewalk area.

The Alexanders on the other hand, cite cases in which businesses were held liable for injuries outside their leased premises, or at the boundaries or entrances. *See J. Weingarten, Inc. v. Brockman,* 134 Tex. 451, 135 S.W.2d 698, 699 (Tex.Comm'n App. 1940, opin. adopted); *Chapman v. Parking, Inc.,* 329 S.W.2d 439, 442 (Tex.Civ. App.—San Antonio 1959, writ ref'd n.r.e.); *see also Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981) (duty to exercise reasonable care not to endanger those using public way); *Atchison, T. & S.F. Ry.,* 563 S.W.2d 660, 666 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.) (occupier/employee). In *Northwest Mall, Inc. v. Lubri–Lon Internat'l, Inc.,* 681 S.W.2d 797 (Tex.App.— Houston [14th Dist.] 1984, writ ref'd n.r.e.), the business, Lubri–Lon, was held liable for the injuries to a mall employee who fell on oil which had spilled into a common walkway in the mall. The appellate court rejected Lubri–Lon's argument that it had no duty to a passerby who was not in its booth, and added that "[t]he existence or non-existence of a 'legal relationship' is of little or no consequence" if the incident is foreseeable.

The evidence that Sam's controlled the ramp and surrounding area supports the findings that creates Sam's liability. We overrule point one.

■ By its second point of error, Sam's claims that the trial court erred in submitting special issues on gross negligence and on exemplary damages (Questions 5 and 6), and in denying its motion for a new trial on those issues. It claims that no evidence or insufficient evidence shows gross negligence.

Appellant's motion for a new trial preserves its objection to Question 5, but not on Question 6. In attacking Question 6, appellant claims that due process mandates a different standard of evidence, not that the evidence failed to meet the standard.

The unobjected-to charge defined gross negligence as "such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the person affected by it." *See Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920 (Tex.1981).

To review "no evidence," "insufficient evidence," or "against the great weight and preponderance of the evidence" points of error, we apply the tests in *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456, 458 (Tex.1985); *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401–02 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965); *Allied Fin. Co. v. Garza,* 626 S.W.2d 120, 125 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Tex.L.Rev. 361 (1960).

A Sam's employee testified that the crack was there from the day the store opened. Robert Guerra, the store's general manager, testified that he knew the surfaces between the ramp and parking lot were unlevel before Mrs. Alexander's fall because of customer complaints that bottles broke when they drove their carts off the ramp. He identified a memo dated 12/29/88 which bore a notation, "Call Hilda or Randy on front entrance curb." He testified that this referred to Houston management.

Willie Enriquez, the sales manager for the Sam's Club, said that during the grand opening, a problem became apparent which was discussed in safety meetings. This was that cars drove too close to the store where the concrete ramp was. Sam's built speed bumps, but they were asphalt and the cars tore them up. He got estimates and got approval to spend the money on the speed bumps.

Enriquez also testified about the problem with the uneven surface between the asphalt and the cement in front of the store. He said that either right before Thanksgiv-

ing or right before Christmas, he tripped there, scuffing his new shoes. He was aware that someone could have a serious accident and told Robert Guerra, the general manager. Management in Houston was notified, but did not act. Guerra did not need approval from Houston to spend $400. Houston management usually decided on requests to spend amounts over $1000 within a couple of days. After Mrs. Alexander fell, Sam's put more asphalt between the ramp and the parking lot surface, at a cost of about $400. Martin denied that Sam's had requested any repair.

The evidence is legally and factually sufficient to support the submission and findings of gross negligence, and the award of damages. We overrule point two.

By point three, Sam's attacks the admission of evidence of its gross sales at the Brownsville store for December 1988 and January 1989. Robert Guerra testified, over proper objection, that gross sales for December 1988 were $3 million and for January 1989 were $4.5 million.

Appellees point out that the jury had many other figures related to the store's financial strength, and urge us to find the testimony was cumulative. The erroneous admission of testimony that is merely cumulative of properly admitted testimony is harmless error. *McInnes v. Yamaha Motor Corp.,* 673 S.W.2d 185, 188 (Tex.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *Celotex Corp. v. Tate,* 797 S.W.2d 197, 201 (Tex. App.—Corpus Christi 1990, no writ).

To obtain reversal of a judgment based on error in the admission of evidence, an appellant must show that the trial court's ruling was in error and that error was "calculated to cause and probably did cause rendition of an improper judgment." Tex.R.App.P. 81(b)(1); *see McKinney v. Nat'l Union Fire Ins. Co.,* 772 S.W.2d 72, 75 (Tex.1989); *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989).

Sam's argues that we should follow *Southland Corp. v. Burnett,* 790 S.W.2d 828, 830 (Tex.App.—El Paso 1990, no writ).

In an alternate holding, that court held admission of evidence of the defendant's gross receipts reversible error, reasoning that gross receipts have no relationship to net worth, which is admissible on the issue of exemplary damages. In that case, counsel argued for consideration of the gross receipts multiplied by number of stores, and no other evidence of the store's financial strength is recited in the opinion. We do not find that this case is controlling.

The record contains much evidence of the size and volume of Sam's and Wal–Mart. Guerra testified that 56,782 members came to the store in December 1988, and that it was safe to assume that each member, on average, would bring one guest. He also testified that there are 130 Sam's Clubs and even more Wal–Marts. During voir dire, only one member of the jury panel indicated he had not been to Sam's.

The jury had before it Sam's lease, reflecting its rent amount of $231,750 per year and additionally requiring Sam's to insure both lessee and lessor for personal injuries up to six million dollars. The lease also allows Sam's to self-insure as long as its net worth exceeds one hundred million dollars.

Moreover, Willie Enriquez, a store manager testified, without objection, that "during December we hit our first million," obviously referring to sales. Plaintiff's Exhibit No. 19, identified as Enriquez' handwritten notes, includes "sales 10,647,000 bottomline January," "109, million 88 profit," and "178 million in bonuses." It also includes "5 million sales," and directly underneath that, "3.5 net profits."

Evidence that Sam's knew of the danger and ignored it was strong. The jury was asked to assess one to one-and-a-half million dollars in punitive damages. It assessed $400,000. Sam's has not shown that the objected-to testimony of gross sales probably affected this assessment. While the exact testimony of the gross sales for December 1988 and January 1989 was not before the jury through another source, sufficient related evidence of the store's financial strength was before the jury that

we hold any error harmless. We overrule point three.

By points four and five, appellant complains that the trial court denied its motion for a new trial. Point four claims that no evidence and insufficient evidence supports the award of $100,000 for Mr. Alexander's loss of consortium, and point five claims that no evidence or insufficient evidence supports the award for future mental anguish.

■ The Alexanders point out that the jury made no separate awards for these items. Rather, the jury awarded Mrs. Alexander $120,000 for future damages, including mental anguish, physical impairment, and loss of consortium, and awarded Mr. Alexander $105,000 for loss of household services and loss of consortium. In the margin beside each element, figures are listed which total the dollar amounts awarded. These notations cannot be considered on appeal. *See First Nat'l Bank v. Zimmerman*, 442 S.W.2d 674, 678 (Tex. 1969); *City of Waco v. Hester*, 805 S.W.2d 807, 817 (Tex.App.—Waco 1990, no writ). Since Sam's does not attack all bases of the total awards, its complaint does not raise reversible error.

■ Moreover, applying the evidence tests set out in point two, we find the evidence sufficient. Evidence showing Mr. Alexander's loss of consortium is as follows. Mrs. Alexander was hospitalized from January 21 to February 17. The Alexanders' son Gerald testified that "a couple of days" after his mother was hospitalized, his father caught a cold and could not visit because of the risk of infecting her. He testified that his father was "pretty depressed about it," as the couple had rarely been apart in their nearly fifty years of marriage. He said the whole incident changed his parents' lives.

Mr. Alexander testified that being unable to see his wife in the hospital "just about killed me," and that before the injury, he and his wife were always together. During her hospital stay, he had to do all the housework, which she had done before. He said the accident seriously disrupted their lifestyle.

Mrs. Alexander testified that she and her husband do everything together, and that she can no longer walk, garden, shop, or visit like she used to. She testified that before, they fished every Sunday, but hadn't been in two years. Now they watch TV instead of going places as they used to. She discovered that she could not walk from one hotel to another on the next block while visiting in Las Vegas. She had to take a taxi.

■ The evidence supporting the award for future mental anguish includes the evidence that Mrs. Alexander is now unable to engage in the activities she enjoyed in the past. Gerald Alexander testified that his mother doesn't walk like she used to, but now limps. He testified that his parents were always active and hardworking, that his mother would work in the yard and garden, and that his parents went places together. He said they went to Las Vegas together three or four times a year, but that was curtailed. Mr. Alexander testified that they used to shop in the mall together and walk a lot, and that they had enjoyed doing yard work together, but now, she could not do yardwork and had not been to the mall in a year and a half. The Alexanders testified that she cannot walk, visit, shop, fish, or garden like she used to, about her embarrassment at having to take a taxi instead of walking a short distance, and about her inability to walk outside unaided, based on a fear of falling. We overrule points four and five.

By point six, Sam's avers that the trial court committed fundamental error in allowing the jury to use a dictionary. During deliberations, the jury sent for a dictionary to get a definition of "flagrant." Both parties agreed on the record that the Court should furnish the dictionary. No objection, much less adverse ruling, is shown. The error if any, was not preserved. Tex.R.App.P. 52(a). We overrule point six.

The judgment of the trial court is affirmed.